## The Pullman Company v. Michael Przybla.

### Gen. No. 12,328.

1. ASSUMED RISK—*how question of, determined.* The question of assumed risk is one of fact which should be submitted to the jury for its consideration.

2. ASSUMED RISK—*when instruction excludes, from consideration of jury.* The question of assumed risk is excluded from the consideration of the jury by an instruction as follows: "If the jury find from the evidence that the plaintiff has made out his case by a preponderance of the evidence as alleged in his declaration, then the jury should find the defendant guilty."

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Reversed and remanded. Opinion filed April 10, 1906.

**Statement by the Court.** This is an appeal from a judgment in favor of appellee in a suit to recover for personal injuries suffered while in appellant's employment.

The material facts are that appellee was one of a gang of fifteen men employed by appellant to clean and wash sleeping cars at the yards of the Santa Fe Railroad Company in Chicago. He had been in the country two years. He had worked in a machine shop and for the Illinois Central Railway Co. cleaning cars for more than a year prior to his employment by appellant. He began work for the latter May 18, 1902, and the accident in controversy occurred May 21st following. In addition to cleaning cars, the gang of which appellee became a member was required when necessary to unload a carload of new wheels brought to the Santa Fe yard to take the place of wheels which upon inspection were found to be worn or untrue, and also to load upon a car such defective wheels to be taken away for repair. These wheels were attached to their axles. When any one wheel became defective, it was necessary to remove its fellow wheel with it, the two constituting a pair connected by the axle. Upon the day when the accident occurred, a flat car arrived at the yard with fourteen or fifteen pairs of wheels. This car was run

near to a turn-table, and the wheels unloaded, the men run-
ning each pair by means of skids down upon the turn-table.
This unloading was finished just before noon. After din-
ner, the men were directed to roll certain old wheels which
had accumulated, from the tracks where they had been placed,
onto the turn-table to be loaded upon the flat car. When the
new wheels were unloaded in the forenoon, appellee held the
turn-table in position to receive them upon its track. The
method pursued was to stop the first pair of wheels on the
turn-table track and then let the others in succession bump
each against the preceding pair. In thus unloading it ap-
pears that one pair of wheels left or jumped from the skid
or from the track, so that one wheel was outside its rail and
the other inside, and the latter bumped against the axle of
the preceding pair, instead of against the wheel in front of it.
When in the afternoon the turn-table had been set to re-
ceive from the track on which they stood the wheels to be
loaded, the foreman directed his men to run them on. The
method pursued was that each man pushed a pair of wheels,
one following behind another. The distance was according
to appellee's contention about one hundred and twenty feet.
The track, it is said, was about level. Each pair of wheels
with axle weighed about 2,600 pounds. They were about
three feet in diameter, so that when the wheels stood against
each other on the track there was a space of about three
feet between the axles. The evidence tends to show that
when the wheels were started, one pair after another, they
were pushed along with more or less speed as fast probably
as a man could readily make them go. The first pair of
wheels was stopped upon the turn-table. The second pair
was allowed to bump against the first and so on, following
each other some six or eight feet apart.

Appellee was aided in starting his pair of wheels by the
foreman, who he states told him to "hurry up." He kept
about five or six feet, he states, from the man preceding and
the man following him kept at about the same distance. He
says that when he came to the turn-table he tried to check
his wheels, but could not do so. The man in front of him

when his pair of wheels reached their destination jumped outside of the tracks from in front of appellee's wheels. When appellee's pair of wheels reached the turn-table some of his fellow workmen called to him to "look out," the reason being, it is said, that he had his hand on the flange of one of his wheels where it might be struck by the wheel following him. He says this "scared" him. He let go his wheels and tried to jump out from between the tracks. In so doing his right foot and leg were caught between one of his own pair of wheels and the wheels behind him, inflicting the injuries complained of. Had he remained where he was between the tracks he would not have been injured. There was a space of three feet between the axles where he could have remained in safety, as did one at least of his fellow workmen. The accident happened just beyond the edge of the turn-table.

The declaration contains four counts, two original and two additional. The first count charges that plaintiff was employed as a car cleaner and for no other purpose, and was directed by the foreman to assist in removing car wheels, the foreman knowing that appellee was not experienced in that class of work; that it was the duty of defendant to furnish two men for each pair of wheels to prevent them from rolling upon plaintiff, and that he was injured by reason of the failure of defendant to furnish a sufficient number of persons to perform the work. The second count contains recitals to the same effect and avers that defendant "carelessly and negligently left said wheels loose and insufficiently guarded." The first additional count charges that defendant negligently directed and permitted another of its servants to roll wheels along the tracks at an unsafe and improper distance behind plaintiff, by reason of which he was injured. The last additional count avers that plaintiff was employed to wash windows and clean cars, and was ordered to leave said employment to roll car wheels; that he was inexperienced in said work, unacquainted with the dangers and that it was the duty of the defendant to have instructed and warned him of dangers incident thereto.

A jury returned a verdict in favor of plaintiff and judgment was entered accordingly.

Runnells & Burry and F. B. Daniels, for appellant.

F. W. Jaros, for appellee; Francis J. Woolley, of counsel.

Mr. Justice Freeman delivered the opinion of the court.

It is claimed in behalf of appellant that moving car wheels was a part of the regular employment of the gang to which appellee belonged; that were it otherwise appellee assumed all open and obvious risk of the duty he was engaged in when injured; that the dangers were open and patent and the employer was not required to instruct him in reference thereto; that the command by the foreman to "hurry up" does not constitute negligence nor excuse the employee from caution; that appellee made no objection to the work and that if there had been a lack of sufficient men, such lack would not constitute actionable negligence; that the jury were improperly instructed and that appellee's attorneys made improper remarks in presence of the jury.

It is urged in appellant's behalf that appellee assumed all open and obvious risks of the employment, including that of being injured as he was. Whether this risk was open and obvious was a question of fact for the jury. Ill. Term R. R. Co. v. Thompson, 210 Ill., 226–237. Had this question been submitted to the jury the verdict as rendered might have been construed as settling it in appellee's favor. In the view taken by a majority of the court this question of assumed risk was erroneously eliminated from the case by the following instruction given at the request of appellee's attorneys: "If the jury find from the evidence that the plaintiff has made out his case by a preponderance of the evidence as alleged in his declaration, then the jury should find the defendant guilty." The instruction is peremptory in form, and following the authority of Ill. Terra Cotta Co. v. Hanley, 214 Ill., 243–246, constituted reversible error for rea-

sons stated in that case, where it was said that the "effect of said instruction was to eliminate the question of assumed risk from the case, as it is not averred in either count of the declaration, expressly or by implication." The writer does not entirely concur in this view in the present case, but it necessitates the reversal of the judgment.

Our attention is called also to the seventh instruction given at appellee's instance. We regard this instruction as open to objection for reasons stated in Chicago U. T. Co. v. Straud, 114 Ill. App., 479–483.

The judgment of the Superior Court will be reversed and the cause remanded.

*Reversed and remanded.*